1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON PAUL SENTER, | Case No.  1:22-cv-01564-SAB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DIRECTING CLERK OF THE COURT TO ENTER JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF AARON PAUL SENTER AND TO CLOSE THIS MATTER |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | (ECF Nos. 18, 20, 21) |

## I.

## INTRODUCTION

Aaron Paul Senter ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff requests the decision of Commissioner be vacated and the case be remanded for further proceedings, arguing the ALJ failed to reconcile an apparent conflict between the residual functional capacity and the vocational expert's testimony.

For the reasons explained herein, Plaintiff's motion for summary judgment shall be denied.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (See ECF Nos. 8, 10.)

**II.**

**BACKGROUND**

**A.    Procedural History**

Plaintiff protectively filed an application for supplemental security income on January 28, 2019.  (AR 74.)  Plaintiff's application was initially denied on June 4, 2019, and denied upon reconsideration on August 28, 2019.  (AR 61-73, 75-87.)  Plaintiff requested and received a hearing before Administrative Law Judge Nancy M. Stewart ("the ALJ").  Plaintiff appeared for a telephonic hearing on June 30, 2021.  (AR 38-60.)  On September 16, 2021, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 16-29.)  On September 7, 2022, the Appeals Council denied Plaintiff's request for review.  (AR 5-7.)

**B.    The ALJ's Findings of Fact and Conclusions of Law**

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, September 16, 2021:

1. Plaintiff has not engaged in substantial gainful activity since January 28, 2019, the application date.

2. Plaintiff has the following severe impairments: anxiety, schizophrenia, and depression.

3. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

4. After careful consideration of the entire record, the ALJ found Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: He can perform simple, routine, and repetitive tasks with occasional contact with the public and only occasionally performing tasks that require teamwork. Plaintiff is unable to work around hazards, such as working at unprotected heights, operating fast or dangerous machinery or driving commercial vehicles.  He is unable to perform jobs that require hypervigilance or watching out for the safety of others.  Plaintiff further needs to be in a static work environment, which is an environment that stays the same from day to day regarding the tasks to be performed as well as the physical environment.  In addition, he is unable to perform assembly line

type work that would require a quota or fast-paced work.

5.  Plaintiff has no past relevant work.

6.  Plaintiff was born on May 28, 1991, and was 27 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

7.  Plaintiff has at least a high school education.

8.  Transferability of job skills is not an issue because the claimant does not have past relevant work.

9.  Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform.

10. Plaintiff has not been under a disability, as defined in the Social Security Act, since January 28, 2019, the date the application was filed.

(AR 21-29.)

## III.

## LEGAL STANDARD

### A.    The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[3] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

[3] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.

> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.

> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on the claimant at steps one through four. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020). A claimant establishes a *prima facie* case of qualifying disability once he has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite his limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[4] A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine

---

[4] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

1  residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

2      At step five, the burden shifts to the Commissioner, who must then show that there are a

3  significant number of jobs in the national economy that the claimant can perform given his RFC,

4  age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d

5  1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines

6  ("grids") or rely upon the testimony of a VE.  See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsburry,

7  468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the five-

8  step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical

9  testimony, and for resolving ambiguities.' " Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala,

10  53 F.3d 1035, 1039 (9th Cir. 1995)).

11      **B.    Standard of Review**

12      Congress has provided that an individual may obtain judicial review of any final decision

13  of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In

14  determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by

15  the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

16  Further, the Court's review of the Commissioner's decision is a limited one; the Court must find

17  the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. §

18  405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant

19  evidence which, considering the record as a whole, a reasonable person might accept as adequate

20  to support a conclusion." Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting

21  Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson

22  v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential

23  clearly erroneous standard).  "[T]he threshold for such evidentiary sufficiency is not high." Biestek,

24  139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means more than a scintilla, but less than a

25  preponderance; it is an extremely deferential standard." Thomas v. CalPortland Co. (CalPortland),

26  993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v.

27  Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the ALJ has erred, the Court may not reverse

28  the ALJ's decision where the error is harmless. Stout, 454 F.3d at 1055–56.  Moreover, the burden

1    of showing that an error is not harmless "normally falls upon the party attacking the agency's

2    determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

3         Finally, "a reviewing court must consider the entire record as a whole and may not affirm

4    simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153,

5    1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).

6    Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may

7    review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th

8    Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). Nonetheless, it is not

9    this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment

10   for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is

11   the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart,

12   400 F.3d 676, 679 (9th Cir. 2005)).

13                                            **IV.**

14                              **DISCUSSION AND ANALYSIS**

15        Plaintiff contends that there is a conflict between the DOT's Level 2 or 3 reasoning required

16   for the jobs identified by the ALJ and his RFC limitation of a static work environment. (Mot. for

17   Summary Judgment ("Mot.") 5, ECF No. 18.) Plaintiff argues that Reasoning Levels 2 and 3

18   require an individual to deal with problems involving a few or several concrete variables and that

19   is not consistent with a work environment that stays the same from day to day and other courts have

20   found that the limitation to no more than occasional changes and occasional decision making is

21   closely aligned with level 1 reasoning. (Mot. 6.) Plaintiff asserts that during the hearing, the ALJ

22   identified the conflict, but failed to obtain a reasonable explanation from the VE who misunderstood

23   the ALJ's definition of a "static work environment." (Mot. 6.) Plaintiff contends that the ALJ

24   failed to obtain a reasonable explanation from the VE regarding the apparent conflict and therefore

25   substantial evidence does not support the ALJ's step five findings. (Mot. 6.) Plaintiff seeks to have

26   this Court reverse the ALJ's decision and remand for payment of benefits or alternately to remand

27   for further proceedings. (Mot. 7.)

28        In response, Defendant concedes there is an apparent conflict with the linen attendant

1   position which requires Reasoning Level 3 since Plaintiff was limited to simple repetitive tasks.

2   (Def.'s Opposition ("Opp.") 7, ECF No. 20.)  However, Defendant argues that there is no apparent

3   conflict between jobs requiring Reasoning Level 2 occupations and a static work environment.

4   (Opp. 7.)  Defendant contends there is no apparent conflict between the VE's testimony and the

5   DOT so the ALJ's duty to resolve conflicts did not arise.  (Opp. 7.)  Defendant states that at the

6   hearing the VE testified that her testimony departed from the DOT because the DOT does not

7   address specific types of work environments, such as a static work environment, but those portions

8   of her testimony were based on her own education, experience, and training.  (Opp. 8.)  Defendant

9   argues that the ALJ properly relied on the VE testimony.  (Opp. 8.)

10      Defendant also contends that Plaintiff offers nothing other counsel's own non-expert

11  vocational opinion that a few concrete variables described in Reasoning Level 2 do not constitute

12  a static work environment.  (Opp. 8.)  Defendant argues that Plaintiff had the opportunity to address

13  this during the hearing but did not do so.  (Opp. 8.)  Further, Defendant asserts that the only court

14  to have addressed this direct issue found no conflict between Reasoning Level 2 occupations and a

15  limitation to a static work environment.  (Opp. 9.)

16      Defendant argues that the error in respect to the linen room attendant occupation is harmless

17  as there still remain three occupations consisting of 101,000 jobs remaining which constitutes a

18  significant number of jobs in the national economy.  (Opp. 10-11.)  Defendant requests that Court

19  affirm the ALJ's decision.  (Opp. 11.)

20      Plaintiff replies that, contrary to Defendant's assertion, the VE did not testify that

21  occupations with Reasoning Level 2 were consistent with the limitation to a static work

22  environment.  (Pl.'s Reply ("Reply") 2, ECF No. 21.)  Further, Plaintiff argues that Defendant's

23  reliance on recent case law is distinguishable because the case relied on did not define static work

24  environment and here the ALJ did.  (Reply 2.)  Plaintiff contends that the definition set forth by the

25  ALJ here is more akin to Reasoning Level 1 occupations that deal with standardized situations with

26  occasional or no variables in or from the situations encountered on the job.  (Reply 2.)  Plaintiff

27  asserts that the cases relied on by Defendant support a finding that Reasoning Level 2 allows

28  occasional changes in the workplace which is not equivalent to a static work environment that stays

1   the same from day to day.  (Reply 3.)

2        **A.    Applicable General Legal Standards**

3        As previously noted, at step five, the Commissioner must "identify specific jobs existing

4   in substantial numbers in the national economy that [a] claimant can perform despite [his]

5   identified limitations."  Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (citation and internal

6   quotations omitted).  That is, the ALJ must consider potential occupations the claimant may be

7   able to perform, based on the claimant's RFC, age, education and work experience, and the

8   information provided by the DOT and the VE.  See id. at 846; Valentine v. Astrue, 574 F.3d 685,

9   689 (9th Cir. 2009); 20 C.F.R. § 416.920(g).

10        "The DOT lists maximum requirements of occupations as generally performed, not the

11   range of requirements of a particular job as it is performed in specific settings."  SSR 00-4p,

12   available at 2000 WL 1898704 (Dec. 4, 2000).  "The term 'occupation,' as used in the DOT,

13   refers to the collective description of those jobs.  Each occupation represents numerous jobs."  Id.;

14   see also Johnson v. Shalala, 60 F.3d 1428, 1435 (9th 1995) (noting the DOT is not comprehensive,

15   that "[i]ntroduction of evidence of the characteristics of specific jobs available in the local area

16   through the testimony of a vocational expert is appropriate, even though the job traits may vary

17   from the way the job title is classified in the DOT," and holding "[T]he ALJ was within his rights

18   to rely solely on the vocational expert's testimony.") (citations omitted).  Information about a

19   particular job's requirements may be available from a VE's experience in job placement or career

20   counseling. SSR 00-4p.  Thus, a VE may be able to provide more specific information about jobs

21   or occupations than the DOT.  Id.; see also Lounsbury, 468 F.3d at 1114.  Accordingly, the ALJ

22   may rely on VE testimony regarding "(1) what jobs the claimant, given his or her [RFC], would

23   be able to do; and (2) the availability of such jobs in the national economy."  Tackett v. Apfel,

24   180 F.3d 1094, 1101 (9th Cir. 1999); Lockwood v. Comm'r of Soc. Sec., 616 F.3d 1068, 1071

25   (9th Cir. 2010) (the ALJ can meet the agency's burden of proving that other work exists in

26   significant numbers by the testimony of a VE).

27        Nonetheless, hypothetical questions posed to the VE must set out all the limitations and

28   restrictions of the particular claimant, as supported by the medical record.  Embrey v. Bowen,

849 F.2d 418, 422 (9th Cir. 1988).  Where the testimony of a VE is used, the VE must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy.  20 C.F.R. § 404.1566(b); see Burkhart v. Bowen, 856 F.2d 1335, 1340 n. 3 (9th Cir. 1988).

SSR 00-4p provides that where there is an apparent unresolved conflict between VE evidence and the DOT, the ALJ is required to reconcile the inconsistency; that is, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE to support a determination or decision about whether the claimant is disabled.  SSR 00-4p, at *2; see also Johnson, 60 F.3d at 1435 (holding that, if the ALJ relies on a VE's testimony that contradicts the DOT, the record must contain "persuasive evidence to support the deviation.").  "An example of a conflict between the DOT and a VE's testimony is when the DOT's description of a job includes activities a claimant is precluded from doing, and the VE nonetheless testifies that the claimant would be able to perform that job." Martinez v. Colvin, No. 1:14-cv-1070-SMS, 2015 WL 5231973, at *4 (E.D. Cal. Sept. 8, 2015) (citations omitted); see also Zavalin, 778 F.3d at 846 (providing example of apparent conflict as "expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle").  The ALJ must inquire, on the record at the disability hearing, as to whether or not there is such consistency.  SSR 00-4p, at *2; Massachi v. Astrue, 486 F.3d 1149, 1153–54 (9th Cir. 2007).  Further, the Social Security Administration ("SSA") notes neither the DOT nor the VE's evidence "automatically 'trumps' when there is a conflict"; rather, the ALJ must resolve the conflict by determining if the explanation given by the VE is reasonable and provides a basis for relying on the VE's testimony rather than the DOT information.  SSR 00-4p, at *2.

Where the ALJ fails to resolve an apparent inconsistency, the court is left with "a gap in the record that precludes [it] from determining whether the ALJ's decision is supported by substantial evidence." Zavalin, 778 F.3d at 846; Massachi, 486 F.3d at 1154 ("we cannot determine whether the ALJ properly relied on [the VE's] testimony" due to unresolved occupational evidence).  Nevertheless, a failure to ask the VE whether his testimony conflicts with the DOT may amount to harmless error if there is no conflict, or if the VE provides

"sufficient support for [his] conclusion so as to justify any potential conflicts."  Massachi, 486 F.3d at 1154, n.19; see also Hann v. Colvin, No. 12-cv-06234, 2014 WL 1382063, at *15 (N.D. Cal. Mar. 28, 2014).

**B.      Testimony of Vocational Expert**

Dr. Heidi Paul, a vocational expert ("VE"), testified at the June 30, 2021, hearing.  (AR 55-60.)  At the start of the expert testimony, the VE confirmed that if her testimony conflicted with the DOT, Dr. Paul would advise the ALJ of the conflict and the basis for her opinion.  (AR 56.)  The ALJ advised that Plaintiff had more than a high school education, four years of college, had been a younger person during the entire period at issue and there is no past relevant work.  (AR 56.)

The ALJ presented a hypothetical of an individual of Plaintiff's age, education and past work experience that is able to perform simple, routine, repetitive tasks; occasional contact with the public; occasional tasks that require teamwork; no work around hazards, such as working at unprotected heights, operating fast or dangerous machinery, or driving a commercial vehicle; and no jobs that require hypervigilance or watching for the safety of others.  (AR 56.)  All work should be in a static environment, that is an environment that would stay the same from day to day in regard to tasks to be performed as well as physical environment; no assembly line type work that would require a quota; and no fast-paced kind of work.  (AR 56.)

The VE opined that the individual would be able to work as a linen room attendant, DOT 222.397-030, medium, SVP 2, with 27,800 jobs in the national economy; laundry worker II, DOT 361.685-018, medium, SVP 2, with 28,500 jobs in the national economy; and cleaner, hospital, DOT 323.687-010, medium, SVP 2 with 25,200 jobs in the national economy.  (AR 56-7.)  The linen room attendant position would be a Reasoning Level 3 and the other jobs are Reasoning Level 2.  (AR 57.)  The ALJ questioned why the linen room attendant position, as a reasoning level 3 position, would be appropriate.  (AR 57.)  The VE stated it fits with the parameters of the hypothetical.  (AR 57.)  It is simple, repetitive tasks; there are no hazards; there is no requirement to watch for the safety of others or be hypervigilant; it is a rather static work environment as well as not fast paced nor does it require an assembly line to complete the essential tasks.  (AR 57.)  The ALJ inquired as to the difference between reasoning level 2 and reasoning level 3 tasks.   (AR 58.)

The ALJ responded,

> reasoning levels have to do with how they would apply the logics or the scientific thinking in a wide range of intellectual or practical problems. So, the specific reasoning levels have to do with, let's see, and let me just look at reasoning level development 3 has to apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form and deal with problems involving several concrete variables in or from standardized situations. And reasoning level 2, you apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and deal with problems involving few concrete variables in or from standardized situations. So that's the difference between 2 and 3 according to the DOT.

(AR 58.)

The ALJ enquired, if based on those definitions, the VE believed the linen room attendant fits within the hypothetical. (AR 58.) The VE opined that it is applying commonsense understanding to carry out instructions. (AR 58.) They are all concrete variables, which means there is no formal or abstract reasoning required to carry out the essential functions of the job. (AR 58.) The ALJ enquired whether there were more variables within the tasks to be performed. (AR 58.) The VE stated that level 3 has several concrete variables and level 2 has few concrete variables, so it is a difference in the amount of variables required, but they are still concrete. (AR 58-9.)

The VE opined that the individual could also work as a scrap sorter, DOT 509-686-018, medium, SVP 2, reasoning level 2, with 47,300 jobs in the national economy. (AR 59.)

The ALJ asked if it would impact these and all jobs if a person was unable to sustain a full productive day due to issues related to mental health, including the ability to concentrate and focus for extended periods of time, so that the actual productive work in an eight-hour workday was four to six hours, and this was to happen on regular and continuing basis. (AR 59.) The VE opined that the hypothetical would prohibit competitive employment. (AR 59.) The ALJ asked if it would impact the jobs if, for the same reason, the individual would be absent two days per month on a regular basis. (AR 59.) The VE opined that that would also eliminate competitive employment. (AR 59.)

The ALJ enquired if there was anything about the hypothetical that was provided that was inconsistent with the DOT or anything omitted, not included in the DOT, regarding these functions. (AR 59.) The VE replied that the DOT does not address the case of work, such as batch case work,

11

1   and it also does not address a specific type of environment, such as a static work environment or a

2   work environment requiring hypervigilance.  (AR 60.)  The DOT also does not address the amount

3   of hours worked per day or absences.  (AR 60.)  These opinions came from her education,

4   experience, and training as a vocational rehabilitation counselor.  (AR 60.)

5       **C.    Discussion**

6           The Ninth Circuit has advised that, "it's important to keep in mind that the [DOT] refers

7   to 'occupations,' not to specific jobs.  'Occupation' is a broad term that includes 'the collective

8   description' of 'numerous jobs' and lists 'maximum requirements' of the jobs as 'generally

9   performed.' "  Gutierrez v. Colvin, 844 F.3d 804, 807 (9th Cir. 2016) (quoting SSR 00-4P, 2000

10  WL 1898704, at *2–3.) "Because of this definitional overlap, not all potential conflicts between

11  an expert's job suitability recommendation and the [DOT's] listing of "maximum requirements"

12  for an occupation will be apparent or obvious."  Gutierrez, 844 F.3d at 807-08.)  The ALJ is only

13  required to follow up on those conflicts that are apparent or obvious.  Id. at 808.  Tasks that are

14  essential, integral, or expected parts of a job are the most likely to qualify as apparent conflicts

15  and where the job itself is a familiar one less scrutiny by the ALJ is required.  Id.

16      1.   Whether there is an apparent conflict between the limitation to a static work
            environment and Reasoning Level 2 occupations

17

18          Plaintiff argues that the occupations identified by the ALJ require Level 2 reasoning and

19  this conflicts with the limitation in his RFC that he needs to be in a static work environment, which

20  is an environment that stays the same from day to day regarding the tasks to be performed as well

21  as the physical environment.  Here, based on the VE testimony the ALJ identified three remaining

22  jobs[5] that Plaintiff can perform:  Laundry Worker II, DOT 361.685-018, medium, SVP 2, with

23  28,500 jobs nationally; Cleaner, Hospital, DOT 323.687-010, medium, SVP 2, with 25,200 jobs

24  nationally; and Scrap Sorter, DOT 509.686-018, medium, SVP 2, with 47,300 jobs nationally.  (AR

25  28.)  It is undisputed that each of these jobs requires a Reasoning Level of 2.

26          The reasoning levels in the DOT range from Level 1(low) to Level 6 (high).  Levels 1 and

27

28  [5] Defendant concedes that the ALJ erred by finding Plaintiff would be able to work as a Linen Room Attendant, so
    the Court shall not address this occupation.

1   2 are defined as follows:

2       LEVEL 1
3       Apply commonsense understanding to carry out simple one- or two-step
        instructions.  Deal with standardized situations with occasional or no variables in
4       or from these situations encountered on the job.

5       LEVEL 2
6       Apply commonsense understanding to carry out detailed but uninvolved written
        or oral instructions.  Deal with problems involving a few concrete variables in or
        from standardized situations.

7   DOT. App. C, <u>Reasoning Development</u>, <u>available</u> <u>at</u> 1991 WL 688702 (Jan. 1, 2016).

8       Plaintiff has been limited to performing simple, routine, repetitive tasks in a static work

9   environment, which is an environment that stays the same from day to day regarding the tasks to

10  be performed as well as the physical environment.  (AR 24.)  Plaintiff does not challenge the

11  limitation to simple work but argues that it conflicts with the limitation to a static work

12  environment.  Plaintiff asserts that courts have found that the limitation to no more than occasional

13  changes and occasional decision making in the work setting is very closely aligned to Reasoning

14  Level 1.  <u>See</u> <u>Steven Rodney C. v. Comm'r, Soc. Sec. Admin.</u>, No. 2:20-CV-01753-YY, 2022

15  WL 1469228, at *2 (D. Or. May 10, 2022) (finding limitation to simple, routine tasks and no

16  more than occasional changes and occasional decision making in the work setting is closely

17  aligned with Level 1 reasoning.).  However, courts in this circuit have consistently found that

18  Level 2 reasoning jobs do not conflict with a restriction to simple work.  <u>See</u> <u>Lara v. Astrue</u>, 305

19  F. App'x 324, 326 (9th Cir. 2008) ("Reasoning Level 1 jobs are elementary, exemplified by such

20  tasks as counting cows coming off a truck, and someone able to perform simple, repetitive tasks

21  is capable of doing work requiring more rigor and sophistication—in other words, Reasoning

22  Level 2 jobs.");  <u>Grigsby v. Astrue</u>, No. EDCV 08-1413 AJW, 2010 WL 309013, at *2 (C.D. Cal.

23  Jan. 22, 2010) (The restriction to jobs involving no more than 2 steps is what distinguishes Level

24  1 reasoning from Level 2 reasoning.);  <u>Abrew v. Astrue</u>, 303 F. App'x 567, 569 (9th Cir. 2008)

25  (finding no conflict between a limitation to only simple tasks and the VE testimony that claimant

26  could perform jobs that require Level 2 reasoning.);  <u>Coleman v. Astrue</u>, No. CV 10-5641 JC,

27  2011 WL 781930, at *5 (C.D. Cal. Feb. 28, 2011) ("the weight of prevailing authority precludes

28  a finding of any inconsistency between a reasoning level of two and a mere limitation to simple,

1   repetitive tasks or unskilled work"); <u>Xiong v. Comm'r of Soc. Sec.</u>, No. 1:09-CV-00398-SMS,

2   2010 WL 2902508, at *6 (E.D. Cal. July 22, 2010) ("Courts within the Ninth Circuit have

3   consistently held that a limitation requiring simple or routine instructions encompasses the

4   reasoning levels of one and two."); <u>see also</u> <u>Rounds v. Comm'r</u>, 807 F.3d 996, 1004 (9th Cir. 2015)

5   (Level 2 reasoning requires "detailed" instructions which are tasks with more than one or two

6   steps.).

7          In the RFC, the ALJ defined a static work environment as "an environment that stays the

8   same from day to day regarding the tasks to be performed as well as the physical environment."

9   (AR 24.)   In addition, the ALJ included the limitation that Plaintiff "is unable to perform assembly

10  line type work that would require a quota or fast-paced work."  (AR 24.)

11         Plaintiff argues that during her testimony, the VE misunderstood the ALJ's definition of

12  a static work environment.  (Mot. 6.)  Plaintiff states, "The VE testified that the job of linen room

13  attendant, which requires Level 3 reasoning, is 'a rather static work environment as well as it's

14  not fast paced or require[s] [an] assembly line to complete the essential tasks.' " (Mot. 6 (quoting

15  AR 57).)  Plaintiff asserts that the ALJ did not define a static work environment as one that is not

16  fast paced or assembly line work and the VE misunderstood the meaning of the static work

17  environment.  (Mot. 7.)  However, the VE did not state that it was a static work environment

18  "because" it is not fast paced or requires an assembly line to complete essential tasks.  The VE

19  stated it was a static environment "as well as" which means "in addition to."  <u>See</u> Cambridge

20  Dictionary,  available  at  https://dictionary.cambridge.org/dictionary/english/as-well-as  (last

21  visited Mar. 7, 2024).  It appears clear that the VE was addressing separate limitations, the static

22  environment, and the preclusion from work in a fast paced or assembly line type work.  Plaintiff's

23  argument that the VE misunderstood the ALJ's definition of a static work environment is

24  erroneous.

25         Plaintiff argues that Reasoning Level 2 requires an individual to deal with problems

26  involving few concrete variables and this is inconsistent with a static work environment that stays

27  the same from day-to-day.  (Mot. 6.)  Defendant counters that this specific issue was addressed

28  in <u>Stacie C.</u> where the Court found no conflict between the limitation to simple routine tasks in a

1  static work environment.  (Opp. 9.)

2      In Stacie C., the claimant's RFC included limitations to simple routine tasks in a static

3  work environment.  Stacie C. v. Kijakazi, No. 2:21-CV-05335-SP, 2023 WL 2749140, at *7 (C.D.

4  Cal. Mar. 30, 2023).  At her hearing, the VE identified occupations requiring Level 2 reasoning.

5  Id.  The court considered "whether an apparent conflict exists in the VE's testimony that a person

6  restricted to a static work environment could perform jobs requiring level 2 reasoning, that is,

7  jobs requiring the ability to deal with problems involving a few concrete variables."  Id.  The

8  claimant asserted that, relying on the dictionary's definition of static, a static environment

9  required "little change," conflicts with having "a few concrete variables" in the workplace.  Id.

10  The court did "not find any apparent conflict between the plain meaning of these terms here.  A

11  workplace marked by little change does not necessarily mean one without problems that may

12  have a few variables."  Id.  The court held that on its face, a static work environment does not

13  preclude an environment in which employees deal with problems that may have a few variables.

14  Stacie C., 2023 WL 2749140, *8.

15      In her reply, Plaintiff argues that Stacie C. is distinguishable because in that case the

16  claimant was limited to a static work environment while here the ALJ defined the static work

17  environment as one that is the same from day to day.  (Reply 2.)  In this instance, the ALJ defined

18  a static work environment as "an environment that stays the same from day to day regarding the

19  tasks to be performed as well as the physical environment."  (AR 24.)  However, Plaintiff fails to

20  explain how the additional definition here would distinguish this case from Stacie C., where both

21  claimants were limited to performing simple work in a static environment.

22      For a conflict to be obvious or apparent the testimony must be at odds with the DOT's

23  listing of job requirements that are essential, integral, or expected.  Gutierrez, 844 F.3d at 808.

24  Level 2 reasoning provides for dealing "with problems involving a few concrete variables in or

25  from standardized situations,"  the Court finds no apparent conflict with the requirement that

26  Plaintiff's tasks and physical environment remain the same from day to day.  Accordingly, the

27  Court finds that there is no apparent conflict between the requirement that Plaintiff's work

28  environment stays the same from day to day regarding the tasks to be performed as well as the

1   physical environment (AR 24), and jobs requiring Level 2 reasoning.

2       2.   Whether jobs exist in significant numbers which Plaintiff can perform

3       Finally, the Court considers whether there remain a significant number of jobs that exist

4   in the national economy that Plaintiff can perform given Defendant concession that Plaintiff is

5   unable to perform the job of linen room attendant.

6       In Gutierrez v. Commr of Soc. Sec., 740 F.3d 519 (9th Cir. 2014), the Ninth Circuit

7   considered what constitutes a region for the purposes of the regulations.  After finding that the

8   region could include the entire state, court noted that they have never set a bright-line rule for

9   what constitutes a "significant number" of jobs.  Gutierrez, 740 F.3d at 528.  They then considered

10  whether 25,000 jobs in several regions of the country are significant.  Id. at 528-29.  The court

11  determined that 25,000 nationally was a close call but affirmed the ALJ's decision holding that

12  25,000 jobs nationally is a significant number of jobs.  Id. at 529.

13      Here, there remain three jobs which the ALJ found that Plaintiff can perform: Laundry

14  Worker II with 28,500 jobs nationally Cleaner, Hospital with 25,200 jobs nationally; and Scrap

15  Sorter with 47,300 jobs nationally.  (AR 28.)   These occupations total 101,000 jobs nationally,

16  which is far above the 25,000 which the Ninth Circuit has found to be a significant number of

17  jobs.

18      Accordingly, the Court finds no error at Step 5 and Plaintiff's motion for summary

19  judgment shall be denied.

20                      **V.**

21              **CONCLUSION AND ORDER**

22      In conclusion, the Court denies Plaintiff's motion for summary judgment and finds no

23  harmful error warranting remand of this action.

24      Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the

25  Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be

26  entered in favor of Defendant Commissioner of Social Security and against Plaintiff Aaron Paul

27  Senter.  The Clerk of the Court is directed to CLOSE this action.

28

IT IS SO ORDERED.

Dated:   **March 8, 2024**

UNITED STATES MAGISTRATE JUDGE